FILED '09 OCT 27 13:04 USDC-ORE

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

WILLIAM ROBINSON,                                            CV 08-6125 TC

              Plaintiff,

      v.                                            FINDINGS AND RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

             Defendant.

COFFIN, Magistrate Judge:

## **INTRODUCTION**

    Plaintiff William Robinson brings this action pursuant to the Social Security Act, 42

U.S.C. § 405(g) ("the Act"), to obtain judicial review of a final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his claim for disability insurance

benefits and Supplement Security Income ("SSI") benefits prior to July 27, 2004. For the reasons

set forth below, the decision of the Commissioner should be affirmed and this matter should be

dismissed.

1 - FINDINGS AND RECOMMENDATION

Plaintiff completed high school and has worked as a groundskeeper, a dock worker, and a machine operator. He was 46 years old at the time of his alleged onset of disability, February 19, 1999. Tr. 77-78.[1]

The medical records in this case accurately set out plaintiff's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## PROCEDURAL BACKGROUND

On May 16, 2000, plaintiff filed an application for disability insurance and SSI benefits. The application was denied initially and on reconsideration. On August 13, 2002, a hearing was held before an Administrative Law Judge ("ALJ"), and on September 26, 2002, the ALJ issued a decision denying benefits.

On November 14, 2003, plaintiff filed a second application for benefits. After a hearing, the ALJ issued a partially favorable decision on February 27, 2007, in which he found that plaintiff became disabled on July 27, 2004, four months after plaintiff's date last insured for disability benefits.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing adequately to assess his limitations due to pain and depression prior to July 2004; (2) posing an inadequate hypothetical question to the Vocational Expert ("VE"); and (3) failing properly to consider lay evidence.

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

2 - FINDINGS AND RECOMMENDATION

Plaintiff last met the insured status requirement on March 31, 2004, and must show that

he was disabled on or before that date in order to be entitled to Title II disability insurance

benefits.  In addition, the September 26, 2002 decision found plaintiff not disabled through that

date.

I.  Medical Evidence

A.  James M. Wahl, Ph.D.

Dr. Wahl conducted a Psycho-Diagnostic Evaluation on March 12, 2004.  Plaintiff had

poor eye contact, his affect was restricted, and his mood dysphoric.  Dr. Wahl concluded that

plaintiff had moderate impairment of both immediate and intermediate memory, but suspected

that this arose from pain rather than any cognitive deficit.  Dr. Wahl diagnosed major depressive

disorder, recurrent, severe, and rule out undifferentiated somatoform disorder, and assessed his

GAF[2] at 50.  Dr. Wahl stated that plaintiff's "pain display, coupled with the apparent absence of

objective medical evidence to explain the severity of his subjective pain complaints, raises the

question of somatoform disorder and associated secondary gain."  *Id.*  Dr. Wahl found that

plaintiff's ability to sustain concentration was suspect due to pain, and that he could be expected

to have significant problems with pace.  Dr. Wahl found that plaintiff was "clearly depressed,"

but noted that it was unclear exactly how his depression might translate into independent

---

[2]  2 The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)).  It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations.  *Id* at 34.  A Global Assessment of Functioning ("GAF") score between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)."  *Id* at 32.

3 - FINDINGS AND RECOMMENDATION

functional limitations. Tr. 241. Dr. Wahl concluded that plaintiff's activities of daily living appeared to be constrained more by physical limitations than mental factors.

The ALJ found that prior to July 27, 2004, plaintiff retained the ability to perform light work, with no frequent bending, stooping, or climbing, and no walking on uneven ground. In addition, plaintiff should not have frequent contact with the general public and was restricted to simple tasks. Tr. 23.

Plaintiff contends that the ALJ erred by failing to address the functional limitations identified by Dr. Wahl. However, as set out above, Dr. Wahl specifically found that plaintiff's functional limitations arose from physical, and not mental, impairments. Dr. Wahl specifically noted that there was no objective medical evidence to support plaintiff's subjective pain reports. Dr. Wahl did identify memory and concentration impairments, and a possible pace impairment, arising out of plaintiff's pain behavior, which are adequately addressed by the ALJ's restriction to simple tasks.

B. Joanne Rutland, PMHNP

Ms. Rutland is a mental health counselor. She began seeing plaintiff in May 2003. Tr. 179. Ms. Rutland saw plaintiff several times through at least May 2006. Tr. 370. In December 2006, Rutland filled out a "Mental Impairment Questionnaire" in which she opined that plaintiff was unable to meet competitive standards in maintaining regular attendance, maintaining punctuality, sustaining a routine without special supervision, and completing a normal workday and work week. Tr. 527-28. Rutland indicated that plaintiff had "no useful ability to function" at a consistent pace without an unreasonable number and length of rest breaks. *Id.* Rutland stated that plaintiff's "depression has been moderate to severe over the last three years-very few periods

of remission of sx [symptoms] - he has been depressed every day for almost the past 3+ years."
Tr. 529. Rutland opined that he would miss at least four days of work per month due to his
psychological impairments or treatments, and that medication had been only minimally effective
at treating his symptoms. *Id.*

The ALJ noted Rutland's treatment notes and the December 2006 opinion. Tr. 20-21, 26-
27. The ALJ found that the limitations arising from plaintiff's degenerative disk disease and
depression, combined with the limitations arising from his cardiac issues, rendered him disabled
after July 2004. Tr. 27. In reaching this conclusion, the ALJ relied upon Rutland's December
2006 letter. Plaintiff contends that Rutland's letter indicates that he had marked limitations for
the three years prior to December 2006. That is not accurate. Rutland states only that plaintiff's
depression had continued for the prior three years, and that it had been "moderate to severe." Tr.
529. Plaintiff points to no objective evidence or medical source opinion assessing depression-
related marked limitations during the relevant period. The ALJ noted that plaintiff reported
improvement in his symptoms in December 2002 and April 2003. Tr. 24. The ALJ's
interpretation of the evidence is rational and should be upheld by this court. *Burch v. Barnhart,*
400 F3d 676, 6800-81 (9th Cir 2005).

C. Jonathon L. Park, M.D.

In December 2002 Dr. Park filled out a form for Disability Determination Services. Tr.
237. He indicated that plaintiff could lift five pounds frequently, walk or stand four hours in an
eight hour work day, and sit one to two hours in an eight hour work day. Plaintiff required a cane
to walk. Dr. Park also noted that these restrictions were based solely upon the patient's
complaints. *Id.* Dr. Park noted that pain and fatigue affected plaintiff's activities of daily living,

5 - FINDINGS AND RECOMMENDATION

and suspected that he had fibromyalgia. Dr. Park stated that the restrictions began in December 2002. *Id.*

On March 12, 2003, Dr. Park examined plaintiff for complaints of lower lumbrosacral pain and midsternal chest pain. Tr. 206. He prescribed physical therapy for lumbrosacral strain and as to "Musculoskeletal chest pain: Rest and take it easy." *Id.*

On September 2, 2004, Dr. Park wrote that plaintiff's "activity of daily living quite limited secondary to pain....He is in the process of applying for disability, which I feel would be reasonable." Tr. 330.

Dr. Park filled out a form prepared by counsel on November 19, 2004, in which he opined that plaintiff would miss four or more days of work per month due to his impairments or treatment. Tr. 334.

The ALJ noted each assessment and accepted Dr. Park's November 2004 assessment as consistent with the record and supportive of disability after July 2004. The ALJ referred to Dr. Park's December 2002 report, in which Dr. Park found that plaintiff's upper and lower extremities evidenced 5/5 strength and that a recent MRI was unremarkable. Tr. 24. The ALJ cited Dr. Park's December 2002 chart note in which the doctor found that plaintiff's subjective complaints were out of proportion to the examination. Tr. 25. As to the December 2002 form, the ALJ rationally concluded that the opinion did not merit much weight because there was no reference to objective findings that would support that degree of limitation and Dr. Park's medical records did not support such limitations.

The ALJ is the "final arbiter" with respect to resolving ambuguities in teh medical evidence. *Tommasetti v. Astrue,* 533 F3d 1035, 1041 (9th Cir 2008). Contradictions between a

6 - FINDINGS AND RECOMMENDATION

doctor's assessment of a claimant's abilities and that doctor's clinical notes, observations, and opinions of the claimant's capabilities is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart,* 427 F3d 1211, 1216 (9th Cir 2005). The ALJ's determination is supported by substantial evidence and should be affirmed.

D. Fibromyalgia

Plaintiff argues that the ALJ failed to consider his fibromyalgia diagnosis when assessing his functional limitations. The argument fails. The ALJ found that fibromyalgia was a severe impairment based on the September 2003 opinion of Michael L. Pylman, M.D. Tr. 20. Dr. Pylman found no functional limitation inconsistent with the RFC as determined by the ALJ. Tr. 199.

The ALJ properly concluded that the medical evidence did not establish disability prior to July 27, 2004. The ALJ's interpretation of the evidence is rational and supported by substantial evidence.

II. Lay Testimony

Plaintiff contends that the ALJ erred by finding that the statements of Rita Roberts do not support greater restrictions in plaintiff's residual functional capacity. Roberts completed a form in November 2003 which she states that plaintiff is unable to walk more than two house lengths, unable to stand for longer than 10-15 minutes, and is limited in his ability to lift, squat, bend, stand, reach, sit, kneel, climb stairs and use his hands. Roberts stated that plaintiff was able to perform simple meal preparation, household tasks including light cleaning, laundry, and limited dishwashing, and that he had no problem with personal care. He did grocery shopping about twice a month with a motorized cart, and his attention span was normal.

The ALJ found that Roberts's statements confirmed plaintiff's ability to perform a wide range of activities. Tr. 26. The ALJ found Roberts to be credible, but concluded that her observations and beliefs did not compel a more restrictive residual functional capacity finding. The ALJ's interpretation of Roberts's statement is rational and supported by substantial evidence.

III. Adequacy of the Hypothetical Question to the Vocational Expert

The ALJ determined that, prior to July 2004, plaintiff was limited to light work with certain restrictions as set out above at page four. The Vocational Expert testified that plaintiff would be unable to perform his past work, but could perform other jobs, including those of electrode cleaner, laundry sorter, and electronics worker. Tr. 547-48.

Plaintiff contends that the hypothetical question to the VE was inadequate because it did not include limitations arising from his chronic pain and depression. However, as set out above, the ALJ properly found that plaintiff had not established that those limitations existed prior to July 2004. The ALJ's hypothetical question to the VE was appropriate.

## RECOMMENDATION

The ALJ's finding that plaintiff was not disabled prior to July 27, 2004 is based on the correct legal standards and supported by substantial evidence. For these reasons, the Commissioner's decision should be affirmed and final judgment should be entered.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due ten days after the date this order is filed. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the

objections are filed. Review of the Findings and Recommendation will go under advisement

when the response is due or filed, whichever date is earlier.

Dated this 27+ day of October, 2009.

THOMAS M. COFFIN
United States Magistrate Judge

9 - FINDINGS AND RECOMMENDATION